IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:20-cv-00412

| | | |
|---|---|---|
| MARIA ALEJANDRA BATLLE, on behalf of herself and all others similarly situated,<br>    *Plaintiff*, | ) ) ) ) ) | **COLLECTIVE/CLASS ACTION COMPLAINT** |
| v. | ) ) | |
| UNITED DRUG SUPPLY, INC.; and SAMANTHA GODFREY.<br>    *Defendants* | ) ) ) ) ) | |

Plaintiff Maria Alejandra Batlle ("Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel, hereby sets forth this collective action for violations of the Fair Labor Standards Act ("FLSA") under § 216(b) against Defendant United Drug Supply, Inc. ("Defendant UDS") and Samantha Godfrey ("Defendant Godfrey") (collectively "Defendants"), pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, as follows:

## PRELIMINARY STATEMENT

1.     This case arises out of Defendants' systemic, company-wide wrongful classification of Plaintiff and other similarly situated employees as exempt from overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. In short, Defendants violated the FLSA by not compensating Plaintiff and all those similarly situated for all hours worked in excess of forty (40) per week as required by law.

2. Plaintiff also brings this action against Defendants for failure to properly pay employees earned and accrued wages on their regular pay date and illegally withholding wages in direct contravention of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq*.

3. In order for an employee to be exempt from the FLSA overtime compensation requirements, Defendants must affirmatively establish that the employee performs duties that meet one of the exempt categories and also that the employee is compensated on a salaried basis. Pursuant to Defendants' policies and practices, Plaintiff and those similarly situated do not exercise judgment or discretion. In fact, during the relevant time period, employees are generally lured and hired on a salaried basis with fancy position titles to suggest they will play an important role with the company, but when they realize their title is meaningless and seek to leave due to Defendants' hostile work environment and unpaid overtime wages, Defendants promise that they will be converted to hourly employees. In other words, Defendants hire employees on a salaried basis to avoid paying any overtime wages. As stated, Plaintiffs were not permitted to use personal judgment or discretion in order to perform their work duties, as all actions and decisions were either made pursuant to Defendant Godfrey's directions or authorized by Defendant Godfrey prior to going into effect. Defendants controlled daily operations at *every* level. Moreover, as dictated by Defendants' pay policies, Plaintiffs are required to track all hours worked, are advised that they will not be paid for missed days occasioned due to personal circumstances, and Defendant Godfrey repeatedly threatens to dock employees' pay if they come in late or leave early.

Case 1:20-cv-00412-UA-JLW   Document 1   Filed 05/08/20   Page 2 of 42

4.    It is clear Defendants choose to classify Plaintiffs as overtime exempt, even though they are treated as hourly non-exempt employees, and even when their hours worked exceeds forty (40) hours in one week, to avoid obligations associated with government contracts and overtime compensation requirements. Thus, Defendants will only compensate Plaintiffs at an overtime premium after the employee complains or threatens to quit. It is therefore improper to treat Plaintiffs as exempt from the overtime requirements of the FLSA.

5.    Based on Defendants' corporate compensation policy, Plaintiffs were misclassified as overtime exempt employees.

6.    Defendants did not compensate Plaintiffs for all hours worked, including all overtime wages earned.

7.    Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed by United Drug Supply, Inc. during the period beginning three years prior to the date of commencement of this action through the date of judgment in this action, and who were misclassified as exempt from overtime compensation and who did not receive all overtime compensation due for hours worked in excess of forty (40) per week.

8.    Accordingly, Defendants are liable for the failure to pay Plaintiff and members of the putative class time and one-half their regular hourly rate for all hours worked in excess of forty (40).

Case 1:20-cv-00412-UA-JLW   Document 1   Filed 05/08/20   Page 3 of 42

9.     Plaintiff and all similarly situated employees who elect to participate in this action seek unpaid compensation, an equal amount of liquidated damages, and/or attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

10.     Plaintiff also bring this action on her own behalf and as a representative of similarly situated current or former salaried employees employed by Defendants under the NCWHA. Plaintiff, who was a North Carolina resident during her period of employment with Defendants and worked for Defendants, who are located in North Carolina, asserts she and the putative class are entitled to all unpaid compensation of one and one-half times the regular hourly rate, prejudgment interest, liquidated damages, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

11.     Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendants' employees in North Carolina:

> All individuals who were, are, or will be employed by United Drug Supply, Inc. within two (2) years prior to the commencement of this action, through the date of judgment or final disposition of this action, and who were misclassified as exempt from overtime compensation and who did not receive all premium pay for all hours worked in excess of forty (40) per week.

12.     Plaintiff Batlle also brings this action individually to remedy Defendants' unlawful acts under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.*, following Plaintiff Batlle's leave from employment to fulfill her active duty service obligations, for retaliating against Plaintiff Batlle after notifying Defendants and participating in her service requirements, and Defendants' depriving Plaintiff of a previously awarded promotion following Plaintiff's

Case 1:20-cv-00412-UA-JLW   Document 1   Filed 05/08/20   Page 4 of 42

military leave, subsequently demoting Plaintiff, reducing Plaintiff's responsibilities, falsely imprisoning Plaintiff, causing Plaintiff Batlle emotional distress, and ultimately terminating Plaintiff in violation of USERRA, North Carolina common law, and North Carolina public policy.

13.     Accordingly, on behalf of herself, Plaintiff seeks all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorney's fees and costs, and all other relief permitted by applicable law.

## PARTIES

1.     Plaintiff Batlle is an adult resident of the State of North Carolina, who currently resides in South Carolina, at 226 Plantation Pointe Drive, Elgin, South Carolina 29045 due to current, active duty military service.  Plaintiff Batlle worked for Defendants as both a salaried exempt and hourly employee, on and off, from approximately 2013 through August 2019.  Yet, the duties were the same whether she was classified as a salaried exempt or hourly employee.

2.     The opt-in and putative plaintiffs/class members are individuals who work or have worked for Defendants as salaried employees, were improperly classified as exempt from overtime compensation, and whom Defendants failed to compensate at the appropriate rate for all hours worked, including time and one-half for hours over 40 per week.

3.     Defendant United Drug Supply, Inc. ("Defendant UDS") is a domestic Limited Liability Company, registered in the State of North Carolina since 2010, with its

principal place of business located at 3000 Bearcat Way, Suite 114, Morrisville, NC 27560. Defendant UDS is a pharmaceutical distributor company, which partners with manufacturers and distributors to fulfill government contract orders and provides pharmaceutical and medical supplies to government agencies, hospitals, retail pharmacies, and surgery centers. The majority of Defendant UDS's business stems from government contracts.

4. According to its website, Defendant UDS's primary operations are "dedicated to serving our country's military facilities," by providing medical supplies to serve military facilities, such as the Durham Veterans' Affairs Medical Center. Defendant employs a number of "salaried" positions, including, but not limited to, customer service representatives, office managers, warehouse workers, and salesmen, all of which engage in working to implement the business plan and operational decisions of Defendant Godfrey.

5. At all relevant times, Defendant UDS has been an employer of Plaintiff, and is thus liable as an employer, joint employer, single enterprise and/or otherwise according to statutory law.

6. Defendant Samantha Godfrey ("Defendant Godfrey") is co-owner, president and CEO of Defendant UDS and has been closely involved in all aspects of the business, including, but not limited to, its hiring, firing, and wage payment decisions during the relevant period.

7. Upon information and belief, during the time period relevant to this action, Defendants were an employer or joint employer, that employed Named and Putative Plaintiffs, pursuant to the FLSA, NCWHA, and USERRA, in that Defendants, or its agents,

held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendants received the benefit of Named and Putative Plaintiffs' labor.  More information about the nature and role of Defendants within the enterprise is provided below.

## JURISDICTION AND VENUE

8.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*. and USERRA, 38 U.S.C. § 4301 *et seq.*

9.     The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendants conducts business in Durham County, North Carolina, which is located within this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 1391(c), inasmuch as at all relevant times, Defendants conducted business within the Middle District of North Carolina, and part of the events or omissions giving rise to these claims occurred in this District.

11.    The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA; false imprisonment; and wrongful termination, because those state law claims arise out of the same nucleus of operative fact as the FLSA and USERRA claims.

12.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

13.     The evidence establishing liability for the causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

## COVERAGE

14.     At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named, Opt-In, and Putative Plaintiffs.

15.     At all times material to this action, Defendants were employers within the defined scope of the FLSA, 29 U.S.C. § 203(d), and USERRA, 38 U.S.C. § 4303.

16.     At all times material to this action, Named, Opt-In, and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

17.     At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

18.     At all times material to this action, Defendants were joint employers pursuant to 29 C.F.R. § 791.2.

19.     At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done not less than $500,000.

8

## FACTUAL ALLEGATIONS TO ALL COUNTS

20.     The majority of Defendant UDS's business derives from government contracts.

21.     Upon information and belief, Defendants represent to the United States Government, during contract negotiations and noted in the finalized contracts, that Defendants do not employ any individuals who are compensated on an hourly basis.

22.     Defendant Godfrey founded and holds ownership in Defendant UDS. Defendant Godfrey is actively involved in the day-to-day activities of Defendant UDS, and she dictates how the company operates, markets itself, acquires business, and compensates its employees.

23.     Defendant Godfrey has and exercises the power to directly dictate whether Defendant UDS complied with or violated the FLSA and NCWHA.

24.     Defendant Godfrey closely monitors all work performed by Plaintiffs.

25.     Defendant Godfrey creates a work environment filled with fear and stress at Defendant UDS.

26.     Defendant Godfrey so closely monitors the actions and movements of Plaintiffs, that Defendants' employees characterize their work experience as wearing "a virtual shock collar," as Defendant Godfrey does not permit employees to interact with one another or otherwise enter common areas of Defendants' facilities at her discretion and would order Employees back to their desks without concern for why the employee was away from their desk.

9

27.     Defendant Godfrey closely controls every aspect of Defendant UDS's business, ranging from dictating specific tasks and duties to Plaintiffs, including but not limited to, restricting which employees are permitted to use which coffee maker and when.

28.     Defendants monitor employee activities via surveillance, including audio recordings, video recordings, and tracking all activity on computers.

29.     Plaintiffs are led to fear the "Wrath of Godfrey" if they do not complete their tasks as exactly instructed by Defendant Godfrey.

30.     All Defendants directly or indirectly exert control over Plaintiffs.

31.     Upon information and belief, at all times material to this complaint, Defendants' uniform approach throughout their operations in securing, assigning, monitoring, and compensating Plaintiffs was intentionally done to evade their obligations under the FLSA and NCWHA.

## **WAGE-RELATED FACTUAL ALLEGATIONS**

32.     Defendants employ individuals in various positions, including, but not limited to, customer service representatives, "procurement specialists," "office managers," warehouse workers, and sales representatives.

33.     Regardless of job duties and position, Defendants misclassify hourly non-exempt employees as salaried-exempt regardless of the employees' duties or hourly compensation.

34.     Accordingly, Defendants did not compensate Plaintiffs for all hours over forty (40) that were worked in a given workweek and did not pay a rate of time and one-half the regular rate for these hours.

35.     While Defendants hire employees as overtime exempt, their pay stubs indicate they are paid per hour, and employees' hours worked are tracked daily.  However, Defendants only begin paying time and one half for hours over 40 per week after an employee complains about Defendants' compensation practices or threatens to quit.

36.     Defendants require all employees to track their hours worked and their hourly rate is identified on their pay stubs.

37.     Defendant Godfrey maintains a hostile work environment, instilling fear in all employees to maintain control and avoid paying overtime.  For example, Defendant Godfrey holds meetings to remind the Employees that North Carolina is an "at-will" state, and she will fire anyone who "acts up."

38.     It is Defendant Godfrey's regular practice to threaten Plaintiffs who arrive late to the start of their shift or leave early.  The employees are punished, and their wages would be reduced accordingly.

39.     Regardless of position, Plaintiffs receive detailed instructions on how Defendant Godfrey wants tasks to be completed.

40.     Before salaried employees can commit to any course of action, the employees are required to go through a chain of command, and the final decision on what course of action to take comes from Defendant Godfrey.

41.     Since Defendant Godfrey micromanages Plaintiffs at every level, no one exercises discretion and judgment when performing their job duties.

42.     Defendants misclassify Plaintiff and other similarly situated employees as overtime exempt, to manipulate the requirements pursuant to government contracts, and evade any premium compensation for hours worked in excess of forty (40) hours in a week.

43.     Defendants' failure to compensate all overtime hours at the appropriate overtime rate and to pay employees all promised, earned, and accrued wages has affected all Plaintiffs similarly.

44.     For example, Plaintiff Batlle began her employment with Defendants in 2013 as a Customer Service Representative ("CSR") and was classified by Defendants as "salaried exempt." However, Plaintiff Batlle was compensated $10 per hour.  During her employment as a CSR, Plaintiff Batlle was required to assist customers, including performing clerical duties such as putting together product lists for clients.

45.     On or about June 2016, Plaintiff Batlle quit her employment with Defendants due to a pending deployment with the United States Navy in Bahrain.

46.     Following her deployment, in October 2017, Plaintiff Batlle returned to work for Defendants and was rehired as a Procurement Specialist I.  As a Procurement Specialist, Plaintiff Batlle's duties included updating internal databases with supply quantities and current pricing, communicating with manufacturer partners regarding pending orders, and monitoring inventory flow.   Named Plaintiff did not exercise any judgment or discretion or have the ability to hire or fire employees.

47.     Plaintiff Batlle was required to communicate with Defendant Godfrey before making any significant decisions regarding pricing with manufacturing partners.  During

her employment as a Procurement Specialist, Plaintiff was compensated $39,767.00 annually or $765.75 weekly.

48.     In the fall of 2018, Defendants promoted Plaintiff Batlle to the position of Procurement Specialist II and received a raise, including a change in salary to approximately $43,000.00 annually or $826.32 weekly.

49.     As a Procurement Specialist II, Plaintiff Batlle maintained similar responsibilities as those entailed for a Procurement Specialist I, but assisted with a larger workload, including being assigned to specific manufacturer accounts, for which she was directed to maintain and strengthen the relationships with the manufacturers.  Named Plaintiff did not exercise any discretion or judgment regarding any significant decisions, and she did not hire or fire employees.

50.     All Plaintiffs work in similar positions (i.e., sales or office staff) where Defendant Godfrey dictates every aspect of their position, and no Plaintiff exercises judgment or discretion in his or her job, because Defendant Godfrey micromanages every aspect of their position and duties.

51.     From October 2017 until December 2018, Plaintiff Batlle worked Monday through Friday from 8:00 a.m. until 5:00 p.m., with a one-hour lunch break.

52.     Approximately four days per week, Plaintiff Batlle worked over her scheduled hours by as little as thirty (30) minutes to more than ninety (90) minutes each day.  All Plaintiffs are required to work similar hours with a one-hour lunch break.  From October 2017 until December 2018, Named Plaintiff worked a minimum of forty-two (42)

13

hours per week, but was not compensated at time and one-half for her hours in excess of 40 per week. As such, for one week alone, she is due at least $63 per week in unpaid wages.

53.    Similarly, putative Plaintiffs and/or class members in similar positions are required to work similar hours to those of Named Plaintiff Batlle but are only compensated on a salaried basis for all hours worked.

54.    In December 2018, Defendants informed Plaintiff Batlle she would be required to work every Saturday, indefinitely.

55.    Upon learning of the additional shifts she was required to work, Plaintiff Batlle complained to Human Resources about not receiving compensation for the additional work and asked that she receive premium overtime compensation for all of hours worked over forty (40) in a week.

56.    Despite Plaintiff Batlle's request to be compensated time and one-half for hours over 40 per week, Defendants did not compensate Plaintiff for any overtime hours worked from December 2018 to April 2019.

57.    Similar to Plaintiff Batlle, Defendants misclassified putative Plaintiffs as exempt, because their duties did not meet the criteria for any exempt classification under the FLSA.

58.    Accordingly, Defendants failed to properly compensate Plaintiffs for all of their hours worked at the appropriate rate.

59.    Defendants' uniform practice of misclassifying employees as salaried exempt, despite limited discretion within their roles, and refusal to compensate employees

for hours worked in excess of forty (40) in a work week at the appropriate rate has affected all Plaintiffs similarly.

## USERRA, FALSE IMPRISONMENT, AND WRONGFUL TEMRINATION FACTUAL ALLEGATIONS

60.     Plaintiff Batlle is an active Reservist in the United States Navy.

61.     As a reservist, Plaintiff Batlle was required to spend one weekend a month attending drill.  On Saturdays when Plaintiff Batlle was required to complete her weekend military obligations, Defendant Godfrey would fulfill Plaintiff Batlle's duties as a Procurement Specialist.

62.     Defendant Godfrey repeatedly made comments about Plaintiff Batlle's weekend obligations for her military service and expressed how Plaintiff Batlle's military service was inconvenient and would interfere with Defendant UDS's work, even commenting she would write a note to get Plaintiff Batlle out of her military obligations.

63.     In March 2019, Plaintiff Batlle informed Defendants she was scheduled for deployment in November 2019.

64.     Later that month, Defendant Godfrey told Plaintiff Batlle it was "unacceptable" that Defendant Godfrey had to fill in for Plaintiff Batlle on weekends where Plaintiff Batlle was unable to work due to her military service obligations.  Frustrated by the mandatory Saturday work without additional pay and derision for her military service, Plaintiff Batlle tendered her resignation and provided her two weeks' notice.

65.     In response to Plaintiff Batlle's resignation, Defendant Godfrey promised Plaintiff Batlle that they would improve the working conditions, including respecting her

15

monthly military service obligations and address compensation issues. As a result of these promises, Defendant Godfrey persuaded Plaintiff Batlle to withdraw her resignation. Despite such promises, nothing changed.

66.     Due to of the continued hostile work environment and Defendants' failure to improve compensation practices as promised, on or about May 2019, Plaintiff Batlle resigned from her position and provided Defendants with her two-weeks' notice.

67.     On the last day of her two-week notice and to avoid losing Plaintiff Batlle, Defendants again asked Plaintiff Batlle to continue her employment with Defendants and offered Plaintiff Batlle a promotion to Procurement Specialist III.

68.     Plaintiff Batlle was hesitant to accept, given the hostile work environment and lack of overtime compensation.

69.     While Defendant Godfrey and Plaintiff Batlle continued negotiating the terms of the new promotion, on June 1, 2019, Plaintiff Batlle provided Defendants with an official copy of Plaintiff Batlle's military orders, outlining her impending deployment, scheduled to begin in the fall of 2019, and mandatory training to take place later that month.

70.     Around June 4, 2019, Plaintiff accepted her promotion to Procurement Specialist III, because this position afforded Plaintiff Batlle the opportunity to continue pursuing a career as a purchaser.

71.     Plaintiff Batlle and Defendants discussed Plaintiff Batlle's goal of obtaining a Certified Purchasing Professional Certification, for which Plaintiff Batlle would need to continue gaining experience in the purchasing department in order to qualify for the certification.

72.     As Procurement Specialist III, Plaintiff was expected to assist with maintaining relationships with existing manufacturer partners, assisting manufacturer partners with completing and filing paperwork with Defendants, and maintaining product pricing and quantities data. As a Procurement Specialist III, Plaintiff Batlle was supposed to be given purchasing power, but was not authorized to make any purchases, outside of small routine orders, without approval from Defendant Godfrey.

73.     As part of the agreed upon terms of the promotion, Defendants promised Plaintiff Batlle that she would be transitioned to hourly pay and would receive a $5,000 bonus and a holiday bonus, that would be paid separately but both prorated to her scheduled and agreed upon last day of employment, October 18, 2019, prior to her deployment. Defendants did not inform Plaintiff Batlle of any conditions that would need to be met in order for Plaintiff Batlle to receive the bonuses.

74.     Essentially, Plaintiff Batlle's duties remained exactly the same throughout her work as Procurement Specialist I, Procurement Specialist II, and Procurement Specialist III.  In other words, while Plaintiff's job duties did not change, and only after Plaintiff threatened to quit did Defendants advise Plaintiff Batlle that she would qualify for hourly pay, including premium pay for any hours worked in excess for forty (40) per week.

75.     Plaintiff Batlle's new core working schedule was Monday to Friday from 9:00 a.m. until 6:00 p.m., with a one-hour lunch break.  Once Defendants advised Plaintiff Batlle that she would be paid hourly, Defendants stopped requiring Plaintiff Batlle work on Saturdays.

76. From June 17 to June 28, 2019, Plaintiff attended training with the United States Navy Reserves in preparation of her pending deployment, as outlined in the initial orders Plaintiff Batlle shared with Defendants.

77. When Plaintiff Batlle returned to work following her two-week training, and without any explanation, Defendants took away Plaintiff Batlle's already limited purchasing power and began transitioning her to a customer service role. Soon thereafter, Defendants removed Plaintiff from her purchasing position and demoted her to a customer service role.

78. Defendants did not provide any advanced notice or justification for demoting Plaintiff Batlle to a customer service position.

79. The customer service position Defendants were requiring Plaintiff Batlle to assume required duties similar to the ones Plaintiff Batlle performed in the initial customer service position Plaintiff Batlle held when she began her employment with Defendants in 2013.

80. Plaintiff Batlle complained to Defendants about the demotion and requested she be able to resume her role as Procurement Specialist III.

81. On or about July 18, 2019, Defendants informed Plaintiff Batlle the demotion would be permanent and Plaintiff Batlle would officially assume a customer service title and that a job description would be forthcoming. Defendants did not notify Plaintiff whether the transition would affect Plaintiff Batlle's benefits, wages, or earning potential.

82.     Defendants informed Plaintiff Battle that, because of her pending deployment, they would need her to perform this new role in the customer service department.

83.     Plaintiff Batlle's new supervisor excessively criticized Plaintiff Batlle and opposed requests made by Plaintiff Batlle.  For example, when Plaintiff Batlle suffered severe headaches caused by loud noises in her new work area, she requested to use sick leave, (leave that she accrued pursuant to Defendants' alleged paid-time off policy), and Plaintiff Batlle's new supervisor denied her request to use the earned leave.  Despite her illness, Plaintiff Batlle abided by the supervisor's decision and worked through the illness.

84.     Prior to Plaintiff Batlle notifying Defendants of her deployment, Defendants had not refused Plaintiff Batlle the right to use her earned leave for unplanned illness.

85.     Plaintiff Batlle was not the first veteran to complain about the noises in Defendants' facilities.

86.     One veteran-employee who suffered from post-traumatic stress disorder ("PTSD") was assigned to work in Defendants' warehouse.  Suffering from visceral reactions to the constant noises in the warehouse, the veteran-employee pleaded with Defendant Godfrey to be placed in a quieter work environment.  Despite the veteran's tears and reasonable requests, Defendant Godfrey dismissed the veteran-employee's concerns, expressing, "This is not my problem."  Following the meeting, this veteran-employee continued working in Defendants' warehouse.

87.     On Thursday, August 1, 2019, Plaintiff Batlle met with a Human Resources representative. During this meeting, Plaintiff Batlle informed the Human Resources

generalist that she had sought assistance from an Employer Support of the Guard and Reserve ("ESGR") mediator and put Defendants on notice that, consistent with Plaintiff Batlle's rights as a member of a uniformed service, she had filed a claim with the Veteran Employment & Training Services ("VETS").

88. Plaintiff Batlle further informed Defendants that the assigned ESGR case manager would be reaching out to schedule a mediation with the company in order to mediate her role within the company as well as educate Defendants on USERRA and its obligations as an employer.

89. Upon information and belief, the ESGR case manager attempted to coordinate with Defendant UDS in order to address Plaintiff Batlle's concerns regarding violations of her rights as an active duty service member. Upon information and belief, the ESGR case manager was unable to contact Defendants and speak with an individual who was authorized to participate in the ESGR mediation.

90. On the afternoon of August 1, 2019, after the meeting with Human Resources, Plaintiff Batlle was ordered into a second meeting. Present at this meeting was Defendants' compliance officer, (a former military service member), and Plaintiff Batlle's new supervisor in the Customer Service department. Defendant Godfrey attended the meeting via video conference.

91. Immediately feeling uncomfortable by the presence of two male superiors and the tone of Defendant Godfrey's voice, Plaintiff Batlle requested a representative from Human Resources be permitted to attend the meeting. As soon as the Human Resources representative entered the room, Defendant Godfrey ordered the representative to leave.

92.     During the meeting, Defendants demanded Plaintiff Batlle agree to the demotion, despite Defendants' having promoted Plaintiff Batlle to the Procurement Specialist III position less than two months earlier.

93.     Plaintiff Batlle reiterated that she had sought assistance through an ESGR mediator to explain her rights as a service member to Defendants. Defendants continued to demand Plaintiff Batlle sign the new job description.

94.     Plaintiff Batlle explained she could not accept the customer service role being forced upon her because it would interfere with her ability to continue working toward a Certified Purchasing Professional Certification.  Regardless, Defendants assured Plaintiff Batlle that no matter what Plaintiff Batlle did, she would not be able to be a purchaser anymore.

95.     Plaintiff Batlle requested to have until the following Monday, August 5, 2019, to sign the new job description, in order to have the opportunity to review the description and discuss the role change with her ombudsman over the weekend during drill. Without reason, Defendants refused and demanded Plaintiff Batlle sign the new job description immediately.

96.     After approximately an hour, Plaintiff Batlle requested she be permitted to go home or return to work. Defendants refused.

97.     For over two hours, Plaintiff Batlle was required to sit and have Defendants harass, intimidate, and pressure Plaintiff Batlle to sign the new job description.  Defendants repeatedly called Plaintiff Batlle "selfish" and remarked that the new role was necessary because of the pending deployment.

98. Despite Plaintiff Batlle being emotionally distraught and crying, efforts to leave and repeated requests to seek counsel from numerous sources including, but not limited to, an ESGR mediator, ombudsman, or a human resource representative, such pleas fell on deaf ears, including the freedom to leave.

99. Defendant Godfrey ended the video conference call instructing the two male supervisors to keep Plaintiff Batlle in the room until she signed the new job description "no matter what" and informed one of the supervisors his job depended on it.

100. Plaintiff Batlle continued asking the male supervisors for permission to leave but they refused, demanding she sign the new job description. Plaintiff Batlle, fearful she would be detained in the small room all day, informed the supervisors that she felt extreme duress. Still, the supervisors refused to allow her to leave.

101. Desperate to leave the room, Plaintiff Batlle offered to return to her workstation and perform the customer service work they demanded of her, but Defendants refused.

102. Threatened by the situation, Plaintiff Batlle attempted to negotiate with the supervisors, offering to remain in the room if they would go back to their workstations. They refused to leave Plaintiff Batlle alone. Plaintiff Batlle felt imprisoned and scared.

103. In fact, it was only after Defendant UDS's in-house counsel and co-owner informed Defendant Godfrey and the other agents of Defendants that they could not detain Plaintiff Batlle against her will that Plaintiff Batlle was permitted to leave.

104. In exchange for permitting Plaintiff Batlle to leave the room, Defendants offered Plaintiff the ultimatum of either signing the new job description by 6:00 p.m. on

August 2, 2019 or risk termination. Plaintiff Batlle reiterated that she needed to maintain her employment with Defendants because her upcoming deployment would make finding new employment impossible.

105.    Defendants provided Plaintiff Batlle the phone number to Defendant's General Counsel and explained the only recourse available would be mediated by Defendant's General Counsel.

106.    Plaintiff Batlle, waiting to obtain the advice of her ombudsman and to allow the ESGR mediator the opportunity to resolve Plaintiff Batlle's concerns regarding her rights as an active duty service member, did not sign the new job description.

107.    On August 2, 2019, Defendant Godfrey terminated Plaintiff Batlle.

108.    Plaintiff Batlle has no history of disciplinary actions and there is no record of Plaintiff Batlle violating a known company policy.

109.    Plaintiff Batlle was deprived the opportunity to receive the assistance from her ESGR case manager.

110.    Defendants retaliated against Plaintiff Batlle for her military service.

111.    Plaintiff Batlle has not received payment for her promised bonuses or any outstanding vacation time.

## FLSA COLLECTIVE ACTION ALLEGATIONS

112.    Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

113.    Members of the FLSA class are similarly situated.

23

114.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed at the appropriate rate for all hours worked in excess of forty (40) per week.

115.     Upon information and belief, there are numerous (in excess of 50) similarly situated current and former employees that fall within the scope of the aforementioned FLSA class.

116.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

117.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

118.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

119.     Named Plaintiff consents in writing to assert her claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Named Plaintiff's signed consent form is filed with the Court as Exhibit A to this complaint.  As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

120.     Named Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS

121. Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

122. <u>Numerosity</u>: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class comprises more than 50 individuals.

123. <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

a. Whether work performed in excess of forty (40) hours per week by putative Class Members is compensable under the NCWHA;

b. Whether Plaintiffs are misclassified as overtime exempt employees;

c. Whether Defendants failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked in excess of forty (40) each week; and

d. Whether Defendants failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight

time and appropriate premium rate for hours worked in excess of forty (40) hours per week on their regular pay date, in violation of the NCWHA.

124.     Typicality: The claims of Plaintiff are typical of the claims that could be alleged by any member of the putative Class, and the relief sought is typical of the relief that would be sought by each member of the class in separate actions.  All putative class members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay employees for all hours worked in excess of forty (40) each week at the appropriate hourly rate.  Defendants' compensation policies and practices affected all putative class members similarly, and Defendants benefited from the same type of unfair and/or unlawful acts as to each putative class member.  Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

125.     Adequacy of Representation: Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Plaintiff and members of the proposed class.  Plaintiff has retained counsel who is experienced and competent in both wage and hour law and complex class action litigation.

126.     Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual

actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

127. Public Policy Considerations: Defendants violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

128.    Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiff and members of the proposed class.

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**Brought by Plaintiff on Behalf of Themselves and All Similarly Situated Employees**

129.    Plaintiff Batlle incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

130.    Defendants willfully violated the FLSA by misclassifying Plaintiff and putative plaintiffs as exempt employees, and a 3-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

131.    At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

132.    At all relevant times, Defendants have employed, and continue to employ employees, including Plaintiff Batlle, and each of the members of the proposed FLSA class, that have been, and continue to be, engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

133.    At all relevant times, Defendants have had gross operating revenues in excess of $500,000.00.

134.    Defendants have willfully and intentionally engaged in a widespread pattern and practice of violating provisions of the FLSA by misclassifying Plaintiffs and similarly situated Employees as "exempt" employees, and thereby failing and refusing to pay them

Case 1:20-cv-00412-UA-JLW   Document 1   Filed 05/08/20   Page 28 of 42

the hourly wage compensation as required by law and in accordance with § 206 and § 207 of the FLSA.

135.    Plaintiff and members of the proposed class are not employed in a *bona fide* executive, administrative, or a professional capacity pursuant to 29 U.S.C. § 213(a)(1) and corresponding regulations.

136.    Plaintiffs and members of the proposed class are not subject to any other exemptions set forth in the FLSA or administrative regulations.

137.    As a result of Defendants' violations of the FLSA, Plaintiff, as well as all others similarly situated, have suffered damages by being denied overtime wages in accordance with § 206 and § 207 of the FLSA.

138.    Defendants have not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other similarly situated present and former Employees.

139.    As a result of Defendants' unlawful acts, Plaintiff and all similarly situated current and former Employees have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interests, attorneys' fees, costs, and other compensation pursuant to § 216(b) of the FLSA.

### THE THREE-YEAR STATUTE OF LIMITATIONS SHOULD APPLY TO THIS CASE BECAUSE THE NON-PAYMENT OF OVERTIME IN VIOLATION 29 U.S.C. § 207(a)(1) WAS WILLFUL

140.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

Case 1:20-cv-00412-UA-JLW   Document 1   Filed 05/08/20   Page 29 of 42

141.   The three-year provision of 29 U.S.C. § 255(a) should apply in this case because the violation of 29 U.S.C. § 207(a)(1) was willful.  Defendants maintained a practice of classifying all employees as "salaried exempt," regardless of job requirements and duties and being subject to the strict, direct control of Defendant Godfrey and merely assisting with implementing her decisions.  Defendants required Plaintiff and all those similarly situated to work hours in excess of forty (40) per week.  When Plaintiff Batlle asked about overtime compensation for hours worked in excess of forty (40) per week, Defendants agreed to compensate Plaintiff at an hourly rate, but continued to treat Plaintiff as a "salaried" employee and did not compensate Plaintiff for hours over forty (40) in a week at the premium overtime rate.

142.   Plaintiff and putative plaintiffs complained to Defendants about their pay practices and asked for more information on how their compensation was determined.  Defendants refused to clarify.

143.   Defendants were aware that Plaintiff and putative plaintiffs were not receiving all of their overtime wages for hours worked in excess of forty (40) per week.

144.   Defendants willfully failed to compensated Plaintiffs and putative plaintiffs all overtime wages for hours worked in excess of forty (40) per week.

**<u>COUNT TWO</u>**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiff on Behalf of Themselves and All Similarly Situated Employees**

145.   Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

30

146.    At all relevant times, Defendants have employed, and/or continue to employ, Named and Putative Plaintiffs within the meaning of the NCWHA.

147.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

148.    Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

149.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, all Defendants were required to pay Plaintiff and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

150.    Defendants employed Named and Putative Plaintiffs within the State of North Carolina.

151.    Defendants' Employee Handbook promises non-exempt Employees they will be compensated pursuant to the FLSA, including the premium rate of one-and-one-half times their regular hourly rate for all worked in excess of forty (40) in one week.

152.    Plaintiffs' paystubs document and inform Plaintiffs' of their hourly rates.

31

153.    Defendants, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for hours worked in excess for forty (40) in a single workweek at the appropriate rate that Plaintiff and putative class members are lawfully entitled.

154.    Consistent with the above, Defendants' failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.13.

155.    As a result of Defendants' unlawful policies and practices, Plaintiff and putative class members have been deprived of compensation due and owing.

156.    Defendants' failure to pay Plaintiff and putative class members all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendants knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

157.    As a result of Defendants' unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d).

## COUNT THREE
### Violation of the Uniformed Services Employment and Reemployment Rights Act
### 38 U.S.C. § 4311
### Brought by Plaintiff Batlle

158.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

159. At all relevant times, Defendants were "employers" as defined in USERRA 38 U.S.C. § 4303(4).

160. At all relevant times, Plaintiff was an "employee" as defined in USERRA, 38 U.S.C. § 4303(3) and who performed "service in the uniformed services" as defined in USERRA, 38 U.S.C. § 4303(13).

161. USERRA provides that "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." *See* 38 U.S.C. § 4311(a).

162. Additionally, individuals to whom an employer "has delegated the performance of employment-related responsibilities" may be individually liable for violating USERRA. *See* 38 U.S.C. § 4303.

163. Defendant Godfrey, as acting president, CEO, and owner of Defendant UDS, maintained the ultimate authority to hire, promote, and fire employees.

164. At all times relevant to this complaint, Plaintiff Batlle's work met or exceeded the legitimate expectations of her employers. Plaintiff Batlle had no history of insubordination, disciplinary action, or violating company policy.

165. At all times relevant hereto, Plaintiff was a reservist in the United States Navy Reserves.

166.    Throughout her employment with Defendants, Plaintiff Battle was reminded of the inconveniences her military service caused Defendants and business operations.

167.    In May 2019, Plaintiff informed Defendants that Plaintiff had received military orders, pursuant to her status as a Navy Reservists, and was scheduled to deploy November 2019.   In preparation of this pending deployment, Plaintiff also informed Defendants it would be necessary for her to complete two (2) weeks of military training in June 2019.

168.    Immediately upon returning from the two-week training, Plaintiff Battle was removed the Procurement Specialist III position, the position to which she was promoted less than two months prior, and transferred to a customer service position akin the customer service position Plaintiff Battle held when she began her employment with Defendants six years prior.

169.    Defendants ostracized Plaintiff from the purchasing department, eliminated Plaintiff's purchasing power, impeded Plaintiff's ability to continue working and gaining the necessary experience to obtain certification, and placed Plaintiff in a new department that required she suffer headaches caused by excessive, discomforting noise.

170.    Shortly after Defendants removed Plaintiff from her position as a Procurement Specialist and transferred her to a Customer Service facing role, Plaintiff informed Defendants she had sought the assistance of an ESGR case manager.

171.    Within twenty-four (24) hours of Plaintiff notifying Defendants she had exercised her rights, seeking the assistance of an ESGR mediator, Defendants held Plaintiff

in a room against her will, demanded she agree to an entry-level position or face termination, and ultimately terminated Plaintiff.

172.    Plaintiff's status as a member of the Navy Reserves, taking time off to complete required military orders, and Plaintiff's exercising the rights afforded to her pursuant to USERRA and through ESGR and VETs was a motivating factor in Defendants' decision to demote and terminate Plaintiff.

173.    Plaintiff Batlle's status as a member of the Navy Reserves was the cause for her demotion and termination.

174.    Defendants discharged Plaintiff because of her service in the Navy Reserves.

175.    At all times relevant to this Complaint, Plaintiff had a protected right to serve her country in the Navy Reserves.

176.    Defendants' discharge of Plaintiff violated USERRA's prohibition against discrimination and retaliation against members of the uniformed services. *See* 38 U.S.C. § 4311.

177.    Defendants' actions in terminating Plaintiff's employment were willful.

178.    As a result of Defendants' actions, Plaintiff has been damaged, and has suffered lost earnings, loss of earning capacity, emotional pain and distress, and loss of benefits.

**COUNT FOUR**
**False Imprisonment**
**North Carolina Common Law**
**Brought by Plaintiff Batlle**

Case 1:20-cv-00412-UA-JLW   Document 1   Filed 05/08/20   Page 35 of 42

179.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

180.    Defendants unlawfully detained Plaintiff Batlle for more than two hours on Defendant UDS's property without her consent and against her will.

181.    There was no legal justification for Defendants' non-consensual detention of Plaintiff Batlle in a confined space.

182.    There was no legal justification for Defendants' refusal to allow Plaintiff Batlle to leave the confinement area and/or Defendants' preventing Plaintiff from leaving Defendants' property.

183.    As a result of Defendants' refusal to allow Plaintiff Batlle to freely leave the confinement area, even despite her frequent requests to leave and tears, Plaintiff was fearful of Defendants' potential use of physical restraint to keep Plaintiff Batlle on Defendants' premises until she signed the new job description being forced upon her.

184.    As a result of Defendants' unlawful and public detention, Plaintiff suffered mental anguish, humiliation, loss of time and interruption of business, and injury to reputation.

**<u>COUNT FIVE</u>**
**Intentional Infliction of Emotional Distress**
**North Carolina Common Law**
**Brought by Plaintiff Batlle**

185.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

186.    The conduct of Defendant Godfrey and the two male supervisors, ratified by Defendants, as alleged above, including but not limited to false imprisonment, constant beratement, ridicule, and offensive and demeaning language, constitutes extreme and outrageous behavior, exceeding all bounds of a civilized society.

187.    The conduct of Defendant Godfrey, ratified by Defendants, as alleged above, was intended to cause Plaintiff Batlle to suffer severe emotional distress, or was carried out in reckless disregard as to whether it would inflict severe emotional distress upon Plaintiff Batlle, or was certain or substantially certain to result in severe emotional distress on the part of Plaintiff Batlle.

188.    The conduct of Defendant Godfrey, ratified by Defendants, as alleged above, was foreseeable to cause, and did in fact proximately cause, Plaintiff Batlle to suffer from severe emotional distress, mental anguish, humiliation, embarrassment, and pain.

189.    Accordingly, Plaintiff Batlle is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. stat. § 24-5(b).

190.    These acts were committed by Defendant Godfrey while she served as an employee of Defendant UDS and while acting within the scope of her employment, and Defendant UDS further ratified Defendant Godfrey's behavior by taking no action to prevent it.

**COUNT SIX**
**Negligent Infliction of Emotional Distress**
**North Carolina Common Law**
**Brought by Plaintiff Batlle**

191.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

192.    The conduct of Defendant Godfrey, as alleged above, including but not limited to false imprisonment, constant beratement, ridicule, and offensive and demeaning language, constitutes negligent conduct, as Defendant UDS was aware of the conduct, but failed to take any reasonable preventative or anticipatory action to protect Plaintiff.

193.    The conduct of Defendant Godfrey and the two male supervisors, ratified by Defendant UDS, as alleged above, was reasonably foreseeable to cause Plaintiff Batlle to suffer severe emotional distress.

194.    As a proximate result of Defendants' negligence, as alleged above, Plaintiff suffered from severe emotional distress, mental anguish, humiliation, embarrassment, and pain.  Accordingly, Plaintiff is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

195.    These acts were committed by Defendant Godfrey while she served as President of Defendant UDS and while acting within the scope of her employment, and Defendant UDS further ratified Defendant Godfrey's behavior by taking no action to prevent it.

196.    Defendant UDS's acts constituted gross negligence and reckless indifference to the rights of Plaintiff Batlle, entitling Plaintiff Batlle to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

**COUNT SEVEN**
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**

38

**Brought by Plaintiff Batlle**

197.   Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

198.   It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. §§ 127B-10, Article I, Section 1 of the North Carolina Constitution, and ubiquitously throughout the statutes and laws of this State, that "it is in the public interest and public welfare to ensure that no discrimination against military personnel in North Carolina is practiced by any business."

199.   Explicitly, "[n]o employer or officer or agent of any corporation, company, or firm, or other person shall discharge any person from employment because of the performance of any emergency military duty by reason of being an officer, warrant officer, or enlisted person of the military forces of this State or the United States." *See* N.C. Gen. Stat. § 127B-14.

200.   The termination of Plaintiff Batlle's employment based on Defendants' discrimination against Plaintiff for her active military service status, following Defendants' false imprisonment of Plaintiff leading to emotional distress, was wrongful as against the public policy of the State of North Carolina.

201.   Such termination proximately caused Plaintiff to suffer emotional distress and other losses, as described above.  Accordingly, Plaintiff is entitled to compensatory damages under North Carolina law, and interest pursuant to N.C. Gen. Stat. § 24-5(b).

202. Defendants' acts constituted willful, wanton, and malicious conduct, entitling Plaintiff to punitive. Damages, pursuant to Chapter 1D of the North Carolina General Statutes.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representative of all those similarly situated under the FLSA collective action;

2. Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as representatives on behalf of all those similarly situated under the NCWHA class;

3. Award Plaintiff and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4. Award Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5. Award Plaintiff and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d);

6.    Award Plaintiff Batlle all back pay, front pay, and past pecuniary losses due as a result of Defendants' unlawful acts, including all remedies provided by USERRA, 38 U.S.C. § 4301 *et seq.*;

7.    Award Plaintiff Batlle all compensatory damages due as a result of Defendant GKN's unlawful acts;

8.    Award Plaintiff Batlle all consequential damages due as a result of Defendants' unlawful acts;

9.    Award Plaintiff Batlle punitive damages for Defendants' malicious, reckless, or grossly negligent conduct;

10.   Award Plaintiff Batlle all costs incurred in the prosecution of this action, including reasonable attorney's fees;

11.   Award Plaintiff Batlle pre-judgment interest; and

12.   Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this May 8, 2020

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
Robert W.T. Tucci (NCDB No. 55014)

41

**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com
rtucci@gildahernandezlaw.com

*Attorneys for Plaintiffs*